## GEORGE C. SHAW v. SUSQUEHANNA BOOM CO.

### ERROR TO THE COURT OF COMMON PLEAS OF LYCOMING COUNTY.

*Argued March 20, 1889—Decided April 8, 1889.*

1. In an action to recover damages from a boom company for the loss of property resulting from an ice-jam and flood, alleged to have been due to the existence of the dam and piers of the company, the opinion of a witness as to the cause of the ice-jam was inadmissible, though he lived by the side of the boom for years and knew the condition of the river before the boom was built.

2. Evidence as to declarations of a former president of the boom company that the piers, which were raised above, were originally built below the surface of the water, for the purpose of allowing the ice to pass over them, was also inadmissible; and a compulsory nonsuit, on the ground that there was no evidence to warrant the jury in finding that the defendant was in any way responsible for the losses complained of, was sustained.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 104 January Term 1888, Sup. Ct.; court below, No. 44 March Term 1887, C. P.

On December 4, 1886, George C. Shaw filed a petition for the appointment of viewers to assess damages against the Susquehanna Boom Co., under a provision of their charter, for injury done to plaintiff's land and stock by reason of an ice gorge and flood which he alleged was caused by the boom company's dam and piers. The viewers were appointed and reported in due course, and upon appeal from their award an issue was granted, in which Shaw was plaintiff and the boom

company defendant. Plaintiff's petition was allowed to stand for a declaration, and defendant pleaded not guilty.

The petition set out, inter alia, the location of plaintiff's farm on the river, and of the defendant's dam and piers. The bill of particulars, contained the following as to the cause of the injury:

"The said injury was caused by an ice-jam, occasioned by the exercise of the powers granted to the said boom company as hereinbefore specified, to wit, by the erection and maintenance of a large number of piers between the borough, now city, of Williamsport, and the mouth of Quineshehocque creek, and within fifteen miles above the mouth of the Quineshehocque creek, and by the erection and maintenance of the dam between the mouth of Lycoming creek and the mouth of Loyalsock creek, near or opposite the city of Williamsport, and by the dead and slack water caused by said dam; and the said piers and dam, and the dead and slack water caused by said dam and piers held the ice which had been frozen in said dam and slack water, and around said piers, and caused the ice which had broken above and came floating down the river on said 6th day of February, 1884, to stop and gorge, which said gorge extended back and up said river to and above and beyond the lands of the plaintiff, where the property which is hereinbefore specified was located, and overflowed and covered the lands and premises of the plaintiff."

Plaintiffs' house was on the river bank about eight miles above Toner's Island, the head of the boom, but the piers of the boom extended up the river to within half a mile of plaintiff's house where one ran out into the river about thirty feet.

Plaintiff called numerous witnesses who had lived along the river opposite the boom for many years, and who testified to seeing the jam and flood which followed it; that there was an opening of only one hundred feet between the last pier of the boom and the shore of the river; that the ice never went out of a part of the boom until spring; that it was jammed for miles down the river from plaintiff's farm. Certain witnesses who had lived on the bank of the river for fifty years testified that they never saw the ice-jam so that the high water would not carry it out, until after the boom piers were built.

Plaintiff called one Davis who had lived alongside the boom

for thirty years, and who also knew the river before the boom was constructed, and offered to ask him the following question:

Q. From your knowledge and experience, and your knowledge of the action of the river, what do you say caused the ice-jam in 1884?

Defendant's counsel object, because the question asks the opinion of the witness, which is not admissible; the plaintiff can only show the facts, from which the jury are to find the facts; the offer is irrelevant, immaterial and incompetent.

By the court: Objections sustained; exception.[1]

Enoch Turley having been called for plaintiff, counsel made the following offer:

" It appearing by the evidence of George S. Banger, that Mahlon Fisher was president of the Susquehanna Boom Company, at the time the witness states he was employed by the boom company for the purpose of building the piers west of the Philadelphia & Erie railroad bridge, plaintiff proposes to ask the witness what Fisher, the president of the boom company, said to him upon the subject of the building of the piers, the manner in which they were to be built; what directions were given him by Mr. Fisher in reference to the construction of these piers. The purpose of this is to show that the then president of the boom company stated to the witness that the object in placing the piers under water, was to allow the ice to pass over the top, and not obstruct the free passage of the ice down the river; the piers having been raised since that time, prior to the flood of 1884, prevents the free passage of the ice."

Defendant's counsel objects (1) To so much of the offer as proposes to put in evidence the reason or alleged reason, of the president of the Susquehanna Boom Company for the construction of the piers of a certain height, but does not object to the evidence, as to any fact as to the size of the piers, or as to their height.    (2) Because the declaration of Mahlon Fisher as president, is mere hearsay, and cannot bind the boom company, defendant, as to the reason for building low piers.    (3) Because it is irrelevant, immaterial and incompetent.

By the court: Objections sustained; exception.[2]

Defendant's counsel moved for a nonsuit, which was granted, the court, CUMMIN, P. J., instructing the jury as follows:

Opinion of the Court.

"There is no evidence whatever in this case which would justify a jury in finding that the defendant is in any way responsible for the injury complained of by the plaintiff. The motion for the nonsuit is allowed, with leave to the plaintiff to file a motion within ten days, to take the same off. Gentlemen of the jury, you are now discharged." [3]

A rule granted to show cause why the nonsuit should not be stricken off, was subsequently discharged, whereupon the plaintiff took this writ and assigned as error:

1. The refusal of plaintiff's offer.[1]
2. The refusal of plaintiff's offer.[2]
3. The entering of the nonsuit and charge of the court.[3]

*Mr. Henry C. Parsons* (with him *Mr. H. T. Harvey, Mr. S. D. Linn* and *Mr W. D. Crocker*), for the plaintiff in error.

*Mr. H. C. McCormick* and *Mr. R. P. Allen* (with them *Mr. Reading* and *Mr. S. T. McCormick*), for the defendant in error.

PER CURIAM:

There was no error in rejecting the evidence referred to in the first and second assignments. The witness, Davis, was asked for his opinion as to the cause of the ice-jam in 1884. He was not an expert, and his opinion was not competent under the well settled rules of evidence. It was the business of the jury to find the cause of the jam from the facts as given by the witnesses. Nor are we able to see that the declarations of Mahlon Fisher, a former president of the boom company, could have been properly admitted. They did not bind the company nor were they relevant to the issue before the court below.

The remaining assignments allege error in the charge of the court and in entering a nonsuit. The portion of the charge complained of is as follows: "There is no evidence whatever in this case which would justify a jury in finding that the defendant is in any way responsible for the injury complained of by the plaintiff. The motion for the nonsuit is allowed." An examination of the testimony shows that the learned judge below was entirely accurate in this instruction. There was

not a scintilla to show that the works of the boom company had anything to do with the ice-jam which caused the injury to the plaintiff's property. Upon the argument at bar we called the attention of the counsel for the plaintiff in error to this point, and asked them to refer us to any evidence which would convict the court below of error. They failed to point out any such testimony, and we were practically asked to assume that because there was an ice-jam in the river, the works of the boom company were the cause of it. It was entirely proper for the court below to nonsuit the plaintiff: it would have been bald error to submit the case to the jury.

Judgment affirmed.